IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SMITH AND NEPHEW, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:07-cv-335-TJW-CE |
| | § | |
| ARTHREX, INC., | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Arthrex, Inc.'s motion for summary judgment of non-infringement (Dkt. No. 96) and Arthrex's motion to exclude the expert testimony of Dr. Wayne Sebastianelli regarding infringement (Dkt. No. 97). Oral argument was heard on these motions on January 29, 2010. For the reasons detailed below, the Court hereby GRANTS IN PART and DENIES IN PART Arthrex's motions.

### I. BACKGROUND

This is a patent infringement case. Plaintiff Smith & Nephew, Inc. ("S&N") filed this suit against defendant Arthrex, Inc. ("Arthrex") alleging infringement of U.S. Patent Nos. 5,306,301 ("the '301 patent") and 5,645,588 ("the '588 patent") (collectively the "patents-in-suit"). The '588 patent is a continuation of an application that is a divisional of the application leading to the '301 patent. S&N asserts claims 1, 3, 4, and 7 of the '301 patent and claim 8 of the '588 patent against Arthrex. The '301 and '588 patents relates to a method and device, respectively, for securing tissue within a patient and more particularly to fixating a graft relative to a bone. A major use of the devices and methods disclosed in the '588 and '301 patents is

1

ACL repair. The ACL is a knee ligament that connects the femur and tibia bones. It is one of the most commonly injured knee ligaments and usually is damaged during athletic activity. An ACL repair involves removing the damaged ACL, selecting a graft material, preparing the knee to receive the graft, and fixing the graft within the knee.

The Court issued its claim construction order on November 20, 2009 (Dkt. No. 82). The asserted claims of the '588 and '301 patents are directed to a one-piece fixation device and method for using same that attaches the graft using an elongated body with a "leading end" and a "trailing end," with each end carrying a filament. The '301 patent specifies that the leading end and trailing end each carry a "lead filament" and a "trailing filament," respectively, while the '588 patent requires that "filament" be threaded through a hole in the leading end and a hole in the trailing end. Each asserted claim also requires a "graft connection element," which in claim 8 of the '588 patent must comprise a "sling member." In its claim construction order, the Court found that the claimed "sling member" and "graft connection element" is distinct from the claimed structure of "filament," and that the "first leading filament" and "first trailing filament" are different structures than the terms "graft connection element" and "sling member."

The commercial embodiment of the patents-in-suit is a product made and sold by S&N named the "EndoButton." Arthrex's accused product is named the "RetroButton." The structure of the RetroButton made and sold by Arthrex is not in dispute.[1] Using independent legal counsel, Arthrex contends that it specifically designed the RetroButton to avoid infringement of the patents-in-suit. Arthrex contends that it designed its RetroButton device without a "trailing

---

[1] While the structure of the RetroButton as made and sold by Arthrex is not in dispute, S&N argues that Arthrex instructs its surgeons to add a second suture in one of the holes in the middle of the button. Arthrex denies this allegation. This is discussed more fully in the Analysis section below.

filament" and without any "filament" threaded through either "end" of the button. Rather, the RetroButton has only a white loop for carrying a graft and a blue suture for pulling the button through a tunnel in bone. The white loop is designed to support the graft both during and after implantation by looping the graft over the three strand portion at the base of the loop. Both the loop and the suture are located in tear-shaped holes in the middle of the button. In use, Arthrex contends that the RetroButton deploys without a "trailing filament." The RetroButton rides on top of the soft "springy" or compressible white loop as it passes through a tight bone tunnel located in the femur. Once the RetroButton is squeezed out the tight tunnel, the package of button and loop decompresses and the device "self flips" prior to any pull of the white loop to seat the button. Once the button "pops" out, it is designed to not pass back through the bone tunnel. The button does not fully rotate until the surgeon pulls back on the graft.

## II.  LEGAL STANDARD

### A.  Summary Judgment

A grant of summary judgment is proper if the pleadings and evidence show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-55 (1986). Upon reviewing the evidence, the Court may only grant summary judgment if there is no genuine dispute of material fact, meaning that "a reasonable jury could [not] return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When ruling on a motion for summary judgment, the non-movant's evidence is to be believed and all justifiable inferences are to be drawn in its favor. *Id.* at 255. When the summary judgment movant demonstrates the absence of a genuine dispute over any material fact, the

burden shifts to the non-movant to show there is a genuine factual issue for trial. *Celotex*, 477 U.S. at 323-24. "Summary judgment is as appropriate in a patent case as it is in any other case." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc*., 911 F.2d 670, 672 (Fed. Cir. 1990). When a claim limitation is not present in an accused device, either literally or under the doctrine of equivalents, the court must grant summary judgment of non-infringement. *See Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997); *Bai v. L & L Wings, Inc*., 160 F.3d 1350, 1353-54 (Fed. Cir. 1998).

### B. Literal Infringement

An infringement analysis requires comparison of the construed patent claims to the accused devices. *See Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1577-79 (Fed. Cir. 1993). This determination of infringement is a question of fact. *Wright Med. Tech., Inc. v. Osteonics Corp*., 122 F.3d 1440, 1443 (Fed. Cir. 1997). In the absence of a genuine dispute regarding the structure or function of the accused product, the question of infringement collapses to one of claim construction and thus is well suited for summary judgment. *See Laitram Corp. v. Morehouse Indus., Inc.*, 143 F.3d 1456, 1461-62 (Fed. Cir. 1998). Literal infringement requires that the accused device contain each limitation of the claim exactly; any deviation from the claim precludes a finding of literal infringement. *See Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996); *see also Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1349 (Fed. Cir. 1998). To directly infringe a method claim, a person must have practiced all steps of the claimed method. *See Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009)*; Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1333 (Fed. Cir. 2008).

## C. Doctrine of Equivalents

Under the doctrine of the equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1312 (Fed. Cir. 2008), *citing Warner-Jenkinson*, 520 U.S. at 21. To prove infringement under the doctrine of equivalents, the patentee must prove equivalency on a limitation-by-limitation basis. *See Digital Biometrics*, 149 F.3d at 1349. "An element in the accused product is equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1360 (Fed. Cir. 2009), *citing Eagle Comtronics, Inc. v. Arrow Communication Labs.*, Inc., 305 F.3d 1303, 1315 (Fed. Cir. 2002). In making that determination, the three-part function-way-result test may be helpful. *Oak Tech., Inc. v. Int'l Trade Comm'n*, 248 F.3d 1316, 1331 (Fed. Cir. 2001). According to this test, a claim limitation is equivalently present in the accused device if an element of the accused device performs substantially the same function, in substantially the same way, to achieve substantially the same result as the corresponding claim limitation. *See Amgen Inc. v. F. Hoffmann-La Roche Ltd.*, 580 F.3d 1340, 1382 (Fed. Cir. 2009); *see also Wavetronix*, 573 F.3d at 1360; *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991). The determination of infringement under the doctrine of equivalents is a question of a fact. *Laitram*, 143 F.3d at 1464.

The Supreme Court has recognized at least two legal limitations on applying the doctrine of equivalents: (1) the "all-elements rule," which bars a patentee from asserting a theory of

equivalence that would entirely vitiate a particular claim element; and (2) prosecution history estoppel, which bars a patentee from asserting a scope of equivalency surrendered during prosecution. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1323 (Fed. Cir. 2009), *citing Warner-Jenkinson*, 520 U.S. at 39 n.8. These limitations are to be determined by the Court. *Id.* "A court may not apply the doctrine of equivalents where so doing would effectively eliminate a claim element in its entirety." *Wavetronix*, 573 F.3d at 1360, *citing Warner-Jenkinson*, 520 U.S. at 29. However, the Federal Circuit has warned that an overly broad application of the all-elements rule may improperly "swallow the doctrine of equivalents" entirely and limit infringement to a "repeated analysis of literal infringement." *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1317 (Fed. Cir. 1998). Prosecution history estoppel may prevent the patentee from asserting doctrine of equivalents infringement if the claim scope was narrowed by amendment during patent prosecution. *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004) (en banc). Prosecution history estoppel bars the application of doctrine of equivalents to recapture subject matter that was surrendered during prosecution. *Hilgraeve Corp. v. McAfee Assocs., Inc.*, 224 F.3d 1349, 1355 (Fed. Cir. 2000).

## III.   ANALYSIS

### A.   Arthrex's motion for summary judgment of non-infringement

Arthrex argues that under this Court's claim construction order it is entitled to summary judgment of non-infringement as to both literal infringement and infringement under the doctrine of equivalents. Regarding literal infringement, Arthrex argues that the RetroButton (i) lacks the "trailing filament" required by each asserted claim, (ii) with respect to the '588 patent, the

6

RetroButton lacks a hole in the leading end and trailing end, and (iii) with respect to the '301 patent, the RetroButton is not rotated "by pulling on the trailing filament." More specifically, Arthrex argues that the RetroButton has no "filament" threaded through either the "leading end" or the "trailing end," since both the white loop and the blue suture are threaded through holes in the middle of the button, not the "ends." Arthrex further argues that even if one were to accept, despite this Court's construction of "leading end" and "trailing end," that the white loop and blue suture were somehow threaded through the leading and trailing ends, the RetroButton has no structure anywhere that corresponds to a "trailing filament." Arthrex argues that even if the white loop is either the "graft connection element" or "sling member," that it cannot simultaneously be the "trailing filament." Regarding claim 8 of the '588 patent, Arthrex argues that there are no holes in either the leading end or the trailing end through which a filament may be threaded. Arthrex argues that there are locations at the ends of the RetroButton body where a hole suitable for carrying a filament could be placed, and that the RetroButton holes are not placed at those locations but are rather placed in the middle of the body. Arthrex also argues that because there is no "trailing filament," that the rotating "by pulling on the trailing filament" step cannot occur. Arthrex argues that even if the "trailing filament" existed, that the initial rotation of the button is accomplished by a self decompression of the butt-and-loop package in conjunction by pulling on the passing suture, not by "pulling on the trailing filament." Arthrex argues that the initial rotation, before any alleged "trailing filament" is pulled, is sufficient to move the RetroButton so that it is no longer "generally parallel" to the bone passage.

Regarding infringement under the doctrine of equivalents, Arthrex argues that the RetroButton does not have an equivalent of (i) a "trailing filament," (ii) a hole in the "trailing

end," and (iii) rotating "by pulling on the trailing filament." Arthrex argues that to the extent S&N contends that the white graft-carrying loop, or some portion thereof, is equivalent to the "trailing filament," this theory would entirely vitiate the "trailing filament" limitation. In other words, if a graft connection element could function both to hold the graft and to rotate the button, there would be no reason to separately claim a trailing suture in the patents-in-suit. Arthrex also argues that prosecution history estoppel bars S&N from asserting that all or part of the graft-carrying loop is equivalent to the "trailing filament" based upon an amendment during the prosecution history of the '588 patent that added a separate "filament" limitation when the claim already recited a "graft connection element." Next, Arthrex argues that the "all-elements rule" prohibits S&N from arguing that the two holes located in the middle portion of the button are equivalent to the holes in the leading and trailing ends, because under S&N's construction the "means for attaching" and "portion of said body" elements would be vitiated and would disagree with the Court's claim construction. Finally, Arthrex argues that the white graft-carrying loop is not equivalent to "pulling on the trailing filament" because the RetroButton deploys in an entirely different way than the method recited in claim 1 of the '301 patent, and any further rotation caused by the pulling on the graft loop is merely incidental to and simultaneous with seating of the button.

Regarding claim 8 of the '588 patent, S&N argues that there is a genuine dispute as to whether the RetroButton has "filament" threaded through the hole in the "trailing end." S&N argues that based on the available evidence, the jury could find that Arthrex infringes claim 8 by inducing surgeons to add a suture to act as a trailing filament. Further, S&N argues that based on Dr. Sebastianelli's report, a jury could find that the RetroButton's loop is literally "filament" and

<br>

8

exists in a hole in the "trailing end." Even if literal infringement is not met on this element, S&N argues that the filament threaded in the hole of the accused device, *e.g.,* the sling member or graft attachment device, is the equivalent to the claimed "trailing end filament" in that the same function-way-result is achieved and that such an analysis does not violate the all-elements rule. S&N further argues that the amendment during prosecution history adding the phrase "filament threaded through" does not limit the "graft connection element" and does not invoke prosecution history estoppel as to that term. As to the second element allegedly missing in the accused product regarding claim 8, S&N argues that the parties' experts have come to fundamentally different positions on whether there are holes in the leading and trailing ends of the RetroButton, thereby indicating that there is a genuine issue of material fact. S&N argues that a reasonable jury could find that the RetroButton's holes are located in the leading and trailing ends, and that the tear-drop shaped holes in the RetroButton literally practices the claim element. Even if literal infringement is not met on this element, S&N argues that a jury could conclude that the differences between the holes in the RetroButton are insubstantially different from the holes required by the claim.

Regarding claim 1 of the '301 patent, S&N argues that the RetroButton has a continuous loop threaded through the holes in the button and that Arthrex instructs surgeons to add an additional filament into the trailing end of the RetroButton. S&N argues that for this limitation there is an issue of fact as to both literal infringement and infringement under the doctrine of equivalents for the jury to resolve. S&N further argues that whether the RetroButton holes are equivalent to the "means for attaching" required by the claim is an issue of fact for the jury to resolve, as the parties' experts have offered different opinions in their reports. S&N also argues

9

that whether the RetroButton is rotated by pulling on the trailing filament is an issue of material fact that should be resolved by the jury. Whether the RetroButton's loop is, or is equivalent to, a trailing filament, or whether the second suture that Arthrex encourages surgeons to use, an issue of material fact still remains that filament is pulled to rotate the RetroButton. S&N argues that the RetroButton rotates to its generally transverse position only when a surgeon pulls back on the graft, thereby pulling on the continuous loop or a second suture. Still further, even if literal infringement is not met, S&N argues that there is an insubstantial difference between the RetroButton deployment method and the method described in the claim.

The Court finds that the undisputed evidence shows that there is no genuine issue of fact as to whether the RetroButton literally infringes the asserted claims. Regarding claim 1 of the '301 patent, the Court finds that as a matter of law the accused device has no "first trailing filament," no "first trailing filament" in the "trailing end," no "first lead filament" in the "leading end," no "means for attaching," and that the button is not rotated "by pulling on the trailing filament." The Court construed "first trailing filament" as "threadlike material threaded through the trailing end." As stated in its claim construction order, "the Court finds that the claimed term of 'filament' is a different structure than the claimed terms of 'graft connection element' and 'sling member'; likewise, the Court finds that the claimed terms of 'first leading filament' and 'first trailing filament' are different structures than the terms 'graft connection element' and 'sling member.'" (Dkt. No. 82, p. 24.) There is no dispute that there is not a second suture or trailing filament physically distinct from the white loop and pulling suture in the RetroButton as made and sold by Arthrex. Thus, as a matter of law the Court finds that there is no "trailing filament" in the RetroButton. Further, because there is no filament in the "trailing end" or

"leading end" of the RetroButton, as those terms were construed by the Court, the Court finds that the "each end carrying a first lead filament and a first trailing filament" limitation is not literally present in the RetroButton.

Next, the Court defined the term "means for attaching" to mean "a single opening, two openings, or a bracket extending from the lower surface of the elongated body and defining an opening, separate from and between the hole in the leading end and the hole in the trailing end." First, because there is no hole in the leading end or trailing end of the RetroButton, and the "means for attaching" must be between those holes, the Court finds that the "means for attaching" element is not literally present in the RetroButton. Second, even if one were to define the holes in the RetroButton to be the holes in the leading end and trailing end, the "means for attaching" element is required to be a "single opening, two openings, or a bracket" that is "separate from and between" those holes. It is undisputed that there is no such structure in the RetroButton. Third, even S&N's expert concedes that the RetroButton does not literally have the "means for attaching" element. ("In view of the Court's construction, it does not appear that the Arthrex RetroButton literally has two openings that are separate from and between a hole in the leading end and a hole in the trailing end. However, the RetroButton still meets this limitation under the doctrine of equivalents…," Paragraph 123 of Dr. Sebastianelli's expert report). Lastly, because there is no "trailing filament," one cannot rotate the button "by pulling on the trailing filament." Further, the holes in the middle of the body of the RetroButton are not holes in the leading end or trailing end as the Court defined those terms. Thus, even if there was a second suture added to the RetroButton device to the middle hole, it does not negate the finding of no literal infringement because the second suture is not added to the trailing end, the first suture is

11

still not in the leading end, and there is no "means for attaching" between the holes. Thus, the Court finds that as a matter of law these elements are not literally present in the RetroButton and grants judgment in favor of Defendant Arthrex as to literal infringement for these terms of claim 1 of the '301 patent.

Regarding claim 8 of the '588 patent, the Court finds that as a matter of law the accused device has no hole in the "leading end" or "trailing end" and has no "filament" threaded through a hole in the "leading end" or "trailing end." The rationale for these terms not being literally presented in the accused device is essentially the same rationale the Court adopted in regards to claim 1 of the '301 patent. The Court defined "trailing end" as "the last part lengthwise of the elongated body that enters the passage last and in which a hole suitable for carrying a filament can be placed." The Court finds that there are locations at the last part lengthwise of the elongated RetroButton body where a hole suitable for carrying a filament could be placed, and that the holes in the RetroButton are not placed at those locations but are rather placed in the middle of the body. Thus, as expressly required by claim 8, the trailing and leading ends do not have a hole in which a filament is placed. Thus, even if there was a second suture added to the RetroButton device to the middle hole, it does not negate the finding of no literal infringement because the second suture is not added to a hole in the trailing end and the first suture is still not in a hole in the leading end. Thus, the Court finds that as a matter of law, these elements are not literally present in the RetroButton and grants judgment in favor of Defendant Arthrex as to literal infringement for these terms of claim 8 of the '588 patent.

The Court finds, however, that there is a genuine issue of fact as to whether the RetroButton infringes the asserted claims under the doctrine of equivalents. Whether the

RetroButton's loop is equivalent to a trailing filament is an issue of material fact. Whether the RetroButton is rotated by pulling on the equivalent trailing filament, i.e. the loop, is an issue of material fact. Further, there remains a genuine dispute over whether the tear drop-shaped holes of the RetroButton are equivalent to the claimed holes in the ends. In addition, whether the loop being inserted through the holes in the middle of the button is equivalent to the "means for attaching" element is still an issue of material fact. The Court finds that prosecution history estoppel does not apply in this situation to prevent S&N from asserting its infringement theory under the doctrine of equivalents. Further, the fact that the RetroButton has merged two structures to meet the limitation of one claimed element, or the fact that one structure meets separate claim limitations, does not necessarily preclude a finding of infringement under the doctrine of equivalents or vitiate a claim limitation where the differences are insubstantial. *See Eagle*, 305 F.3d at 1317 ("when two elements of the accused device perform a single function of the patented invention, or when separate claim limitations are combined into a single element of the accused device, a claim limitation is not necessarily vitiated, and the doctrine of equivalents may still apply if the differences are insubstantial"); *see also Searfoss v. Pioneer Consolidated Corp.*, 374 F.3d 1142, 1151 (Fed. Cir. 2004) ("a combination of physical components may serve as an equivalent to a single limitation of the claimed invention."). The Federal Circuit is clear that "one-to-one correspondence of components is not required, and elements or steps may be combined without ipso facto loss of equivalency." *Ethicon*, 149 F.3d at 1320. "In other words, two physical components of an accused device may be viewed in combination to serve as an equivalent of one element of a claimed invention, as long as no claim limitation is thereby wholly vitiated." *Id.* The Court finds that a reasonable jury could view the differences between

13

the claim elements and the equivalent structures or methods in the RetroButton as insubstantial. Thus, infringement under the doctrine of equivalents remains a genuine issue of material fact and summary judgment is inappropriate at this time.

Therefore, the Court will prohibit Plaintiff from arguing during trial literal infringement as to the elements specifically listed above, but will allow the Plaintiff to argue infringement under the doctrine of equivalents consistent with its ruling below.

### B. Arthrex's motion to exclude Dr. Sebastianelli's expert report

Arthrex asks the Court to exclude any evidence or argument that the RetroButton infringes the patents-in-suit under the theory of literal infringement or the doctrine of equivalents. Regarding the doctrine of equivalents, Arthrex argues that Dr. Sebastianelli's report lacks "particularized testimony and linking argument" on a limitation-by limitation basis, and the report's evidence and argument on the doctrine of equivalents is merely subsumed in its case of literal infringement. Specifically, Arthrex argues that while Dr. Sebastianelli's report offers a doctrine of equivalents analysis on certain claim terms, for at least six elements Dr. Sebastianelli's entire doctrine of equivalents argument consists solely of boilerplate doctrine of equivalents language with no analysis whatsoever. In addition, Arthrex argue that this approach merely subsumes the evidence and argument on the doctrine of equivalents in S&N's case of literal infringement and thus lacks the required "evidence and argument concerning the doctrine and each of its elements."

In response, S&N argues that Dr. Sebastianelli's opinions on infringement under the doctrine of equivalents are entirely proper. S&N argues that because the majority of the limitations of the asserted claims are met literally by the accused device and its use, S&N only

14

needs to show "equivalents" as to those limitations it believes are met based on that doctrine. S&N argues that Dr. Sebastianelli's report addresses infringement of each element of every asserted claim, literally and under the doctrine of equivalents. S&N argues that Dr. Sebastianelli's expected testimony at deposition and trial will explain the opinions that are set forth in his report, and thus proof of infringement under the doctrine of equivalents thus will not be subsumed in the case of literal infringement. S&N further argues that Dr. Sebastianelli's opinions on literal infringement are consistent with the patent language and the Court's claim construction order.

This Court holds that Dr. Sebastianelli may not testify beyond the scope of his expert report. The Court finds that to the extent Dr. Sebastianelli did not provide sufficient analysis of whether any particular claim limitation is met by the doctrine of equivalents, Dr. Sebastianelli is unable to testify as to whether the equivalent structure in the RetroButton infringes under the doctrine of equivalents. S&N argues that "Dr. Sebastianelli's *expected testimony* easily will make the case for infringement literally and under the doctrine of equivalents," that "Dr. Sebastianelli's *expected testimony* at deposition and trial will explain the opinions that are set forth in his report," and that "Dr. Sebastianelli's…*corresponding testimony* will be 'particularized' and further linked by attorney argument at trial." (*See* Dkt. No. 105, S&N's Response to Defendant's Motion to Exclude, pp. 7-8.) However, Dr. Sebastianelli must have set forth a minimal basis in his expert report as to why each element that is not met by literal infringement is met by the doctrine of equivalents. To otherwise allow Dr. Sebastianelli to testify at trial on these elements without properly disclosing its position would unfairly prejudice Arthrex and defeat one of the primary purposes that the expert report serves.

The Court finds that in many instances Dr. Sebastianelli sets forth the rationale as to why, under the function-way-result test, the equivalent structure of the RetroButton device practices the claim element limitation under the doctrine of equivalents. However, in many other instances, the Court finds that Dr. Sebastianelli fails to set forth such a rationale and does not provide adequate notice to Arthrex of its assertions. In these instances, Dr. Sebastianelli's boilerplate and conclusory language is no more meaningful than S&N merely stating that the doctrine of equivalents is met for a particular element. The Court has reviewed Dr. Sebastianelli's expert report and finds that he has provided only boilerplate assertions of infringement under the doctrine of equivalents as to the following terms:[2]

- "having an upper surface, a lower surface, a leading end, and a trailing end" (Paragraph 80)
- "a portion of said body disposed between said hole in said leading end and said hole in said trailing end being configured for attaching to said body the graft connection element" (Paragraph 92)
- "A method of attaching a graft to bone, comprising:" (Paragraph 111)
- "a first graft attachment device having an elongated body with a maximum length, a maximum width, an upper surface, a lower surface, a leading end, and a trailing end" (Paragraph 117)
- "each end carrying a first lead filament and a first trailing filament" (Paragraph 121)
- "securing the graft to the means for attaching" (Paragraph 129)

---

[2] The referenced number in the parenthesis indicates the paragraph of Dr. Sebastianelli's expert report which has conclusory statements and mere boilerplate language for his entire analysis under the doctrine of equivalents for the particular claim limitation.

16

- "inserting the first lead and trailing filaments through the first passage and pulling primarily on the lead filament until the elongated body of the graft attachment device emerges" (Paragraph 132)
- "rotating the elongated body by pulling on the trailing filament and seating the elongated body against the surface of the bone to fixate the graft to the bone" (Paragraph 137)

In each of these instances, Dr. Sebastianelli provides essentially the following boilerplate language:

> Even if the RetroButton were found not to practice this claim element literally, it would still practice this element under the doctrine of equivalents because it performs substantially the same function in substantially the same way to achieve substantially the same result. This is so for the same reasons discussed above in conjunction with literal infringement.

Dr. Sebastianelli's inconsistent treatment of his doctrine of equivalents analysis supports this Court's ruling, because he clearly can and knows how to provide a more detailed analysis under the doctrine of equivalents for some limitations, but intentionally provides an inadequate and mere conclusory explanation for other terms. These instances cited above lack any "particularized testimony and linking argument" for the doctrine of equivalents analysis. *See Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1322-23 (Fed. Cir. 2003) (evidence for infringement under doctrine of equivalents must include "particularized testimony and linking argument"); *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996) ("Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice."). The fact that Dr. Sebastianelli includes in his infringement analysis under the doctrine of equivalents "*the same reasons discussed above*

17

*in conjunction with literal infringement*" is also no help, for "the fact there was evidence and argument on literal infringement that may also bear on equivalence" is insufficient to demonstrate infringement under the doctrine of equivalents. *Lear Siegler, Inc. v. Sealy Mattress Co. of Mich., Inc.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989). Dr. Sebastianelli's "evidence and argument on the doctrine of equivalents cannot merely be subsumed in [his] case of literal infringement." *Id.* Thus, as to these limitations, Dr. Sebastianelli is precluded from offering testimony on whether these specific claim limitations are met under the doctrine of equivalents. This ruling does not affect Dr. Sebastianelli's ability to offer testimony as to whether these limitations are literally met, as long as the Court has not already ruled as a matter of law that those elements are not literally present in the RetroButton as described in more detail above.

Regarding literal infringement, Arthrex argues that (i) the report's analysis of the "graft connection element" and "sling member" contradicts the plain language of the claims and the Court's claim construction order and (ii) the report's analysis of the "trailing filament" contradicts the Court's claim construction order. As stated in the Court's order on the parties' motions in limine (Dkt. No. 136), S&N will not be allowed to suggest under the theory of literal infringement that the term "sling member" is equivalent to "trailing filament," or that the Court's constructions are the same for those terms. As also previously stated, S&N is not prevented from arguing that the sling member feature of the accused device meets the limitations of "sling member" and "trailing filament" under the doctrine of equivalents. This ruling applies to the term "graft connection element" to the same extent as the term "sling member." Further, in view of the Court's holding above that S&N may not show literal infringement as to certain elements, the Court finds that the remainder of Arthrex's request to preclude Dr. Sebastianelli as to literal

18

infringement is moot. Still further, as previously stated by this Court in its rulings on the parties' motions in limine, Plaintiff's expert did not opine on any infringement issues surrounding an additional suture to the accused device, and thus Plaintiff's expert is prevented from opining that the accused device with an additional suture infringes either literally or under the doctrine of equivalents.

With respect to Arthrex's request to preclude Dr. Sebastianelli from relying on and comparing S&N's commercial embodiment with the accused device to show infringement, the Court notes that its prior ruling on Defendants' motion in limine No. 1 and the parties' agreement makes Arthrex's request now moot.

## IV. CONCLUSION

Regarding Arthrex's motion for summary judgment, the Court finds that as a matter of law the accused RetroButton device does not literally infringe claim 1 of the '301 patent or claim 8 of the '588 patent based upon the accused device literally missing certain elements. Because the remaining asserted claims are dependent claims, this ruling applies equally to those claims. The Court finds, however, that there is a genuine issue of fact as to whether the accused device infringes the asserted claims under the doctrine of equivalents.

Regarding Arthrex's motion to exclude, the Court finds that Dr. Sebastianelli's report only provided a boilerplate and a mere conclusory analysis under the doctrine of equivalents for certain claim limitations. This Court holds that Dr. Sebastianelli may not testify beyond the scope of his expert report. Thus, the Court finds that Dr. Sebastianelli is precluded from offering testimony on whether those specific claim limitations are met under the doctrine of equivalents.

Thus, the Court hereby GRANTS IN PART and DENIES IN PART Defendant Arthrex's motion for summary judgment of non-infringement and motion to exclude Dr. Sebastianelli's report on infringement.

IT IS SO ORDERED.

SIGNED this 5th day of February, 2010.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE