IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SMITH AND NEPHEW, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:07-cv-335-TJW-CE |
| | § | |
| ARTHREX, INC., | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is Plaintiff Smith and Nephew, Inc.'s ("Smith & Nephew's") motion for a permanent injunction. [Dkt. No. 184.] Defendant Arthrex, Inc. ("Arthrex") opposes the motion for permanent injunction. The Court held a full evidentiary hearing on the issue of a permanent injunction on March 29, 2010. Also before the Court is Arthrex's motion for stay of the injunction pending appeal. [Dkt. No. 215.] Smith & Nephew opposes the motion to stay. The Court has carefully considered the parties' submissions, the record, and the applicable law. For the following reasons, Smith & Nephew's motion for a permanent injunction is GRANTED and Arthrex's motion for stay pending appeal is GRANTED.

**I.     BACKGROUND**

The parties to this case selected a jury on February 1, 2010. The trial commenced on February 8, 2010 and the jury reached its verdict on February 12, 2010. On March 31, 2010, the Court entered Final Judgment in favor of Smith & Nephew in accordance with the jury's verdict, awarding an additional Four Hundred Seventy Two Thousand, Six Hundred Sixty Seven Dollars ($472,667) in pre-judgment interest for a total award to Smith & Nephew of Five Million, One Hundred Eighty Five Thousand, Six Hundred Sixty Seven Dollars ($5,185,667). [Dkt. No. 193.]

Arthrex moved for judgment as a matter of law on the issues of invalidity, non-infringement, and no lost profits damages, and this Court recently denied those motions. [*See* Dkt. No. 242.] The issues presented before the Court are whether Smith & Nephew is entitled to a permanent injunction, and if so, whether Arthrex is entitled to a stay of the injunction pending appeal.

## II. LEGAL STANDARD

The Patent Act provides that courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. A permanent injunction is appropriate when a four-part test is satisfied:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *Id.*

Whether an injunction should be stayed pending an appeal involves four considerations:

1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

2) whether the applicant will be irreparably injured absent a stay;

3) whether issuance of the stay will substantially injure the other parties interested in the proceeding;

4) where the public interest lies.

*Standard Haven Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990). A court does not give equal weight to each factor, but instead uses a flexible balancing approach. *Id.* at 512-13. "When harm to applicant is great enough, a court will not require 'a strong showing' that applicant is 'likely to succeed on the merits.'" *Id.* at 513, *citing Hilton v. Braunskill*, 481 U.S. 770, 776-78. "Thus, the four stay factors can effectively merge…[and] this court assesses movant's chances for success on appeal and weighs the equities as they affect the parties and the public." *Id.* at 513 (citations omitted). "The purpose behind a court granting a stay pending appeal is generally preventative or protective because the stay seeks to maintain the status quo pending a final determination of the merits of the suit." *MicroStrategy, Inc. v. Business Objects, S.A.*, 661 F. Supp. 2d 548, 559 (E.D. Va. 2009) (citations omitted).

### III. DISCUSSION

#### A. Permanent Injunction

Bearing the traditional four factors for awarding a permanent injunction, the Court now turns to the facts of this case to assess the propriety of permanent injunctive relief.

##### 1. Irreparable Injury

Smith & Nephew has demonstrated irreparable injury. Smith & Nephew directly competes with Arthrex in the market for femoral cortical ACL graft fixation devices, and this fact weighs heavily in the Court's analysis. The best case for obtaining a permanent injunction often occurs when the plaintiff and defendant are competing in the same market. In that context, the harm in allowing the defendant to continue infringing is the greatest. This Court has recognized the high value of intellectual property when it is asserted against a direct competitor in the plaintiff's market. "Past harm to a patentee's market share, revenues, and brand

recognition is relevant for determining whether the patentee has suffered an irreparable injury." *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010) (citations omitted). There has been a loss of market share, lost profits, and potential revenue to Smith & Nephew in the past by Arthrex's acts of infringement, and there will likely be such loss in the future. There is also a concern of loss of brand name recognition and goodwill. "These are the type of injuries that are often incalculable and irreparable." *z4 Technologies, Inc. v. Microsoft Corp.*, 434 F. Supp. 2d 437, 440-41 (E.D. Tex. 2006) (finding no irreparable harm when the plaintiff "will not suffer lost profits, the loss of brand name recognition or the loss of market share because of [defendant's] continued sale of the infringing products"). Further, Arthrex designed its infringing RetroButton product to compete directly with Smith & Nephew's EndoButton product and Arthrex has employed marketing and sales tactics to target Smith & Nephew's customers. Arthrex's arguments to the contrary, focusing on the adequacy of monetary damages as relief, are not persuasive. Accordingly, the Court finds that Smith & Nephew will suffer irreparable injury absent an injunction.

### 2. Inadequate Remedies at Law

Smith & Nephew has also demonstrated the inadequacy of legal remedies. It is true that the jury awarded a damages verdict based upon acts of direct infringement and induced infringement. Those damages, however, are designed to compensate Smith & Nephew fairly and reasonably for its past injury. A threat of continuing infringement exists. Although future damages in lieu of an injunction may compensate Smith & Nephew for an *approximate* loss, such approximation does not make future damages adequate in the sense that they are a suitable proxy for injunctive relief. As discussed above, Smith & Nephew makes and sells products and

4

has a presence in the relevant market. Further, Smith & Nephew has name recognition, goodwill, and market share in the relevant market. The loss associated with any of these effects is particularly difficult to quantify. *See i4i*, 598 F.3d at 862. Difficulty in estimating monetary damages is evidence that remedies at law are inadequate. *Id.*; *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 703-04 (Fed. Cir. 2008). The inability to calculate Smith & Nephew's future loss with reasonable precision makes legal remedies inadequate in this case. The threat of future infringement exists and an injunction against future acts of infringement is the proper remedy to prevent future infringement.

### 3. Balance of Hardships

The "balance of hardships" assesses the relative effect of granting or denying an injunction on the parties. *See i4i*, 598 F.3d at 862. Notwithstanding a permanent injunction, Arthrex will remain free to sell its RetroButton product. In contrast, absent an injunction, Smith & Nephew will continue to suffer irreparable injury to its business, future opportunities, goodwill, potential revenue, and the very right to exclude that is the essence of the intellectual property at issue. Arthrex's actions relating to the RetroButton have impacted Smith & Nephew's market share and its ability to sell its products. The Court rejects Arthrex's arguments that Smith & Nephew would benefit more from Arthrex's continued infringement, as this argument ignores the irreparable harm that will be inflicted on Smith & Nephew's reputation, goodwill, and brand name recognition. Although Arthrex will be harmed by an injunction, the precise tailoring of the injunction at hand ameliorates this harm, which only prohibits future acts of infringement and does not remove the already sold infringing products from the marketplace. *See i4i*, 598 F.3d at 863 ("the injunction's narrow scope substantially mitigates the negative

effects on the public, practically and economically"). The Court has considered the balance of hardships and finds that, overall, in the context of a permanent injunction, the balance of hardships favors Smith & Nephew in this case.

### 4. Public Interest

The question presented by this factor is whether the public interest would be disserved by an injunction. The "touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *i4i*, 598 F.3d at 863. The public has an interest in a strong patent system and it is generally in the public interest to uphold patent rights against an adjudicated infringer. *See id.* Permanent injunctions help serve that interest. In this case, Arthrex has submitted numerous declarations from surgeons using the infringing RetroButton product stating that they choose the infringing RetroButton because of its "important and distinct advantages over other types of graft fixation devices."[1] Arthrex argues that this injunction is one of the rare and limited circumstances that raises health and safety concerns and that such an injunction would be contrary to the public interest. *See Commonwealth Sci. & Indus. Research Org. v. Buffalo Tech., Inc.*, 492 F. Supp. 2d 600, 607

---

[1] Smith & Nephew has filed a motion to strike the declarations filed by Arthrex in support of its request to deny the permanent injunction request. [Dkt. No. 226.] Arthrex argues that the filed declarations should be stricken because they are hearsay, not disclosed during normal discovery of the case, and are made by biased individuals. The Court rejects Smith & Nephew's arguments and DENIES its motion to strike. The Court finds that such declarations are relevant for consideration of the *eBay* factors and that disclosing these declarations during briefing on the permanent injunction is not contrary to the local rules or to this Court's docket control order. *See i4i Ltd. Partnership v. Microsoft Corp.*, 670 F. Supp. 2d 568, 601 n.9 (E.D. Tex. 2009) (rejecting patentee's motion to strike defendant's declaration relating to a permanent injunction when declarations were produced after trial and not during the normal course of discovery). The Court will consider the declarations and afford them the appropriate weight to which they are entitled.

(E.D. Tex. 2007). The Court agrees with Arthrex that the RetroButton product has features that are arguably more advantageous than the EndoButton product covered by the infringed patent. However, the Court finds that this factor does not override the remaining factors favoring an injunction. Arthrex's argument would essentially preclude all injunctions on medical devices where the adjudicated infringer sold an infringing, yet improved, product. Any harm to the public will be minimized by the narrowly tailored scope of the injunction, which only prohibits future acts of infringement and does not remove the already sold infringing products from the marketplace. *See i4i*, 598 F.3d at 863 ("By excluding users who purchased or licensed infringing Word products before the injunction's effective date, the injunction greatly minimizes adverse effects on the public."). Overall, the Court concludes that the public interest does not weigh heavily in either party's favor and that this factor is essentially neutral.

After considering the traditional equitable factors, the Court concludes that a permanent injunction is proper in this case. Thus, the Court GRANTS Smith & Nephew's request for a permanent injunction.

### 5. Scope of the Injunction

Regarding the scope of the injunction, Arthrex has not argued that any particular portion of the proposed injunction by Smith & Nephew should be modified. Further, Arthrex has not requested or argued any delay of the injunction for a potential design around of the asserted patent or a modification of the RetroButton product. As already mentioned, the proposed injunction prohibits only future acts of infringement after the injunction's effective date and does not remove the already sold infringing products from the marketplace. Thus, the requested injunction would not prohibit surgeons or hospitals that possess RetroButtons from using them,

nor would it have any effect on patients presently recovering from ACL reconstruction using the RetroButton. Accordingly, it is hereby ORDERED that:

Arthrex, Inc. is hereby restrained and enjoined, pursuant to 35 U.S.C. § 283 and Federal Rule of Civil Procedure 65(d), from any further infringement of claim 8 of U.S. Patent No. 5,645,588 ("the '588 patent") until the expiration of the '588 patent, including, but not limited to, sales and manufacture of the RetroButton product.[2]

### B. Stay of the Injunction

In the event that the Court grants a permanent injunction, Arthrex seeks a stay of the permanent injunction to avoid suffering irreparable harm pending appeal. Bearing the traditional four factors for granting a stay of a permanent injunction, the Court now turns to the facts of this case to assess the propriety of a stay.

### 1. Likelihood of Success on the Merits

Arthrex argues that it has presented substantial legal questions regarding infringement. Specifically, Arthrex argues that it is likely to succeed on the merits of an appeal for three principal reasons: (1) Smith & Nephew cannot establish as a matter of law that its asserted "graft connection element" comprises a "sling member," and as a result, the jury's verdict of infringement is not based on substantial evidence; (2) prosecution history estoppel bars the assertion of any "filament" not threaded through holes in the end of the device as an equivalent; and (3) Smith & Nephew's theory of infringement violates the "all elements rule." Smith & Nephew argues that Arthrex's arguments are based on flawed theories that have been previously

---

[2] Because the Court is contemporaneously granting Arthrex's motion to stay the injunction pending appeal, the effective date of the permanent injunction is effectively postponed pending appeal.

rejected by the Court and the jury.

As to the first factor, the concept of likelihood of success on the merits is not a rigid one. *See Standard Havens*, 897 F.2d at 512-13. If the evidence is ultimately determined to support the jury's findings that the asserted claims, as construed by the Court, were infringed, then the injunction fashioned by the Court is appropriate. If, however, Arthrex's position that its RetroButton product does not infringe based upon the arguments it has presented, then Smith & Nephew's case is at an end. The answers to these questions are not easy. Although disputed questions of infringement and invalidity are present in nearly every patent case following a jury verdict, the Court finds that the facts and legal issues of this case are particularly close on the issue of infringement. There is a substantial dispute over the issue of infringement. The Court finds that Arthrex "has demonstrated not only a 'fair' or 'better than negligible chance' of succeeding on the issue of infringement, but a 'substantial case' on each of the asserted grounds." *See Standard Havens*, 897 F. 2d at 515. Accordingly, the Court finds that this factor favors granting a stay of the permanent injunction.

### 2. Balance of Hardships

The parties essentially treat the *Standard Havens* factors two and three, irreparable harm to the moving party and substantial harm to the non-moving party, as one factor in a general "balance of hardships" analysis. Although there is some overlap in the questions whether a plaintiff is entitled to a permanent injunction and whether the defendant should receive a stay of the injunction on appeal, a finding that a permanent injunction is warranted does not preclude a granting of a stay of that injunction pending appeal as both issues require different analyses. *See Extreme Networks, Inc. v. Enterasys Networks, Inc.*, 2009 WL 679602, *4 (W.D. Wis. Mar. 16,

2009). For example, the harm to the defendant is less important in the context of a motion for a permanent injunction. *Id.* However, the analysis changes in the context of a request for a stay on appeal because of the chance for reversal. *Id*. The harms Arthrex describes are of the type that could leave a significant impact on its business even if it prevails on appeal. Arthrex argues that it will suffer immediate and irreparable loss of goodwill from its customers, and it will be difficult, if not impossible, to recover that goodwill. Arthrex argues that customers who leave Arthrex are not likely to switch products yet again once Arthrex prevails on appeal and that the damage to Arthrex's reputation is likely to be permanent and irreparable. Such loss is not easily measured by money damages and hence qualifies as "irreparable harm." Arthrex has established, and the Court finds, that Arthrex will be irreparably harmed absent a stay. The Court rejects Smith & Nephew's arguments to the contrary. Further, the Court finds that a stay pending appeal will not substantially injure Smith & Nephew, particularly in view of the conditions of the stay as more fully discussed below. Thus, while in the context of awarding a permanent injunction the Court finds that the balance of hardships favors Smith & Nephew, the Court finds that in the context of a stay of the permanent injunction pending appeal the balance of hardships favors Arthrex.

### 3. The Public Interest

Arthrex also argues that there is a strong public interest in granting the stay. Arthrex's arguments here are substantially similar to its arguments for the public interest factor in regards to the permanent injunction. Specifically, Arthrex argues that the RetroButton offers features and benefits beyond the patented features of the device described in the '588 patent and covered in the EndoButton. Arthrex has submitted numerous declarations from surgeons using the

infringing RetroButton product stating that they choose the infringing RetroButton because of its "important and distinct advantages over other types of graft fixation devices." Arthrex argues that a denial of the stay would disrupt the routine surgical practices of thousands of surgeons across the country while they wait for a decision on appeal. The Court agrees with Arthrex that the RetroButton product has features that are arguably more advantageous than the EndoButton product covered by the infringed patent. On the other hand, the public has an interest in a strong patent system and it is generally in the public interest to uphold patent rights against an adjudicated infringer. *See i4i*, 598 F.3d at 863. Overall, the Court finds that the public interest does not weigh heavily in either party's favor. However, a stay of the injunction will ensure that any ultimate interference with third parties' continuing reliance on the RetroButton products occurs only after the conclusion of the appeal in this complex case.

After considering the traditional equitable factors, the Court concludes that a stay of the permanent injunction is proper in this case. This order should not be read as implying any opinion of this Court that an injunction should not ordinarily issue on an infringement finding between competitors. But this is not the issue. The question is whether the Court should stay the injunction pending an appeal. That remedy requires the Court to consider and balance all of the facts of the case under the *Standard Havens* framework. In the Court's view, a stay is appropriate under the terms set forth herein. Thus, the Court GRANTS Arthrex's request for a stay of the permanent injunction pending appeal.

### 4. Conditions of the Stay

The Court will temper the injury to Smith & Nephew for the duration of the stay to compensate it for any infringement during the pendency of an appeal by imposing certain

conditions. Pursuant to this Court's order, the parties have conferred on a set of conditions that would apply during a stay pending appeal. While the parties agree in spirit on some of the issues, the parties essentially dispute most or all of the proposed conditions in some fashion.

The parties dispute the royalty amount to be paid per RetroButton into escrow pending appeal. Arthrex has proposed a 35% royalty on every RetroButton sold while the appeal is pending. In contrast, Smith & Nephew argues that it is entitled to a 55% lost profits amount for each RetroButton sale, but as a compromise would accept a 45% royalty. At trial, Smith & Nephew's damages expert opined that an 18% royalty was reasonable compensation for each infringing sale. In Smith & Nephew's post-verdict briefing on supplemental damages, it requested supplemental damages in the amount of an 18% royalty on RetroButton sales made between February 1, 2010 through the entry of judgment. [*See* Dkt. No. 185.] Arthrex stipulated to this 18% reasonable royalty for RetroButton sales from February 1, 2010 through the entry of final judgment for supplemental damages and stipulated to this amount for future damages in arguing against a permanent injunction. [*See* Dkt. Nos. 186 and 188.] The Court finds that a 36% royalty, which is twice what Smith & Nephew requested for supplemental damages, twice what its expert opined was the reasonable royalty rate at trial, and the average rate between the 18% royalty and the requested 55% royalty by Smith & Nephew, is the appropriate amount for Arthrex to pay during pendency of the appeal.

This Court hereby ORDERS Arthrex to pay into escrow, on a quarterly basis, a royalty for any RetroButton sales before the conclusion of the appeal starting from the date of April 1,

2010.³ The parties are directed to meet and confer on an appropriate escrow agent and procedures for ensuring compliance with this order, which shall be effective immediately. The parties shall notify the Court within ten calendar days of the name of the escrow agent and agreed procedures for making deposits with such agent. Failing an agreement, the Court will appoint an escrow agent and outline procedures for ensuring compliance with this order. All costs of the escrow agent shall be borne by Arthrex. The Court also orders Arthrex to make available, on a quarterly basis and subject to the protective order issued in this case, its relevant books and records of accounts to Smith & Nephew's counsel and an independent financial expert of Smith & Nephew's choice to ensure compliance with the escrow obligations. Should the injunction issued by the Court become effective after the conclusion of the appeal, then Smith & Nephew shall be entitled to the monies paid into escrow. Otherwise, the parties may make a claim to the escrowed funds after the conclusion of the appeal.

The Court has read the other portions of the parties' proposals as to the conditions of the stay. The Court imposes the following conditions on Arthrex pending appeal, effective as of the date of this order:

1. Arthrex shall not directly engage in, nor sponsor, presentations at medical conferences about the RetroButton or EndoButton. This restriction shall not prevent Arthrex from supporting physician research.

2. Arthrex shall not engage in comparative advertising or marketing of the RetroButton

---

³ Pursuant to the Final Judgment in this case, the Court awarded Smith & Nephew post-verdict supplemental damages in the amount of a reasonable royalty rate of 18% for all RetroButton sales from February 1, 2010 through the date the Final Judgment was entered, March 31, 2010, subject to pre-judgment interest. [*See* Dkt. No. 193.] Accordingly, the RetroButton sales unaccounted for and subject to these conditions are those occurring on and after the date of April 1, 2010.

versus the EndoButton from the date of this order.

3. Arthrex shall suspend any current sales incentives for the purchase of the RetroButton (e.g., larger than historical discounts, trade outs, consulting agreements) and shall not institute any new incentives. This restriction shall not apply to medical education training.

4. In the event the Court's judgment is affirmed on appeal, Arthrex shall pay to Smith & Nephew 36 percent of Arthrex's RetroButton sales during the term of the stay. Arthrex shall provide its RetroButton sales data on a quarterly basis to Smith & Nephew and place 36 percent of these sales into an account with a mutually agreeable third party escrow agent.

The Court finds that these conditions of the stay are reasonable and appropriate under all the circumstances of this case. These conditions, in the Court's view, will adequately protect Smith & Nephew from any potential injury caused by the stay of the injunction pending appeal.

## IV. CONCLUSION

For the aforementioned reasons, the Court GRANTS Smith & Nephew's motion for a permanent injunction. The Court also GRANTS Arthrex's motion for a stay of the permanent injunction pending appeal, subject to the various conditions as enumerated above.

IT IS SO ORDERED.

SIGNED this 18th day of June, 2010.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE